Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP, LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

David A. McGee, *pro hac vice* to be filed
**ALMEIDA LAW GROUP, LLC**
3133 Connecticut Ave NW
Washington, DC 20008
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

*Attorneys for Plaintiff and the Putative Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MURPHY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | Jury Trial Demanded |
| vs. | |
| DOMINO'S PIZZA FRANCHISING LLC, DOMINO'S PIZZA LLC, ARI FOODS, INC., AAI FOODS, INC., and DOES 1-10, | |
| Defendants. | |

## I.    INTRODUCTION

1.      This case seeks to hold Defendants Domino's Pizza Franchising LLC and Domino's Pizza LLC (together, "Domino's")—a multibillion dollar pizza chain—as well as franchisees Ari Foods, Inc., and Aai Foods, Inc., ("Franchisees," and together with Domino's and the Doe defendants, "Defendants"), responsible for forcing Californians to pay undisclosed fees for their Domino's orders that were not shown in advertised prices and falsely listed as "Tax 2" in sales receipts.

2.      Specifically, Defendants advertised prices in their stores fail to include all mandatory fees that a customer will have to pay in the initial price displayed to customers, and indeed, fail to include mandatory fees that—under California law—must be included in Defendants' advertised prices.

3.      While Defendants operate on a "franchise model" in many instances, on information and belief, as well as the ongoing investigation of counsel, Domino's controls the advertised prices, supposed taxes, and fees charged to customers making purchases at Domino's restaurants in California, including the Domino's restaurants owned and operated by the Franchisees and visited by Plaintiff.

4.      Last minute, mandatory fees like those charged by Defendants are called "Junk Fees" by the Federal Trade Commission ("FTC"),[1] and this type of Junk Fee pricing strategy— including additional fees after the customer has seen an initial advertised price—is commonly called "drip pricing" or "bait and switch" advertising.

5.      Junk Fees, drip pricing, and bait and switch advertising are all illegal in California.

6.      On October 7, 2023, California enacted law S.B. 478 (the "Honest Pricing Act"), which expressly banned Junk Fees by prohibiting businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A). The Honest Pricing Act became effective on July 1, 2024.

7.      The Honest Pricing Act further confirmed that drip pricing and bait and switch advertising were already illegal in California, providing that the "act is intended to specifically prohibit drip pricing, which . . . like other forms of bait and switch advertising, is prohibited by *existing* statutes, including the Unfair Competition Law . . . and the False Advertising Law." *Id.* at § 1(a)-(b) (emphasis added).

8.      As former President Joe Biden explained before he left office, "junk fees may not matter to the very wealthy, but they matter to most other folks in homes like the one I grew up in,

---

[1] As defined by the FTC, "Junk Fees" are "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer" or fees that are "hidden," such as those "disclosed only at a later stage in the consumer's purchasing process or not at all." *Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011*, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (to be codified at 16 C.F.R. pt. 464), *available at* https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011 [https://perma.cc/2NKH-M3DJ] (cleaned up).

like many of you did. They add up to hundreds of dollars a month. They make it harder for you to pay your bills."[2]

9.     Plaintiff John Murphy's experience is instructive. In September 2025, Mr. Murphy purchased a large, two-topping pizza, a large, one-topping pizza, and cheesy breadsticks in person at Domino's store #7764, which is owned and operated by Ari Foods, Inc.  When Mr. Murphy was deciding what to order, he relied on the advertised price of the two pizzas and the breadsticks on Defendants' in-store menu.  However, at checkout, in addition to sales tax, Mr. Murphy was charged a "Tax 2" amount that, although deceptively and misleadingly labeled as "Tax," was in reality a Junk Fee charged by Defendants to offset their own business expenses.

10.     The prices advertised for the two pizzas and the breadsticks were material to Mr. Murphy's decision to proceed with the transaction, and the failure to include the mandatory "Tax 2" Junk Fee was a substantial factor in Mr. Murphy's decision to complete the purchase.

11.     Had Mr. Murphy known that he would be charged an unlawful Junk Fee that was claimed as a "Tax," he would not have purchased the two pizzas and the breadsticks and/or refused to pay the unlawful "Tax 2" Junk Fee.

12.     This action seeks a return of the unlawfully charged fees from Defendants to Californians and other impacted consumers and seeks to force Defendants to engage in honest pricing that discloses the full price of a customer's order.[3]

## II.     JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

13.     The District Court of the Northern District of California has personal jurisdiction over the parties in this matter because Plaintiff resides in Alameda County and because Domino's,

---

[2] The White House, *President Biden's State of the Union Address*, The White House (Feb. 7, 2023), https://web.archive.org/web/20250106155151/https://www.whitehouse.gov/state-of-the-union-2023/ (last visited Feb. 17, 2026).

[3] At this time, Plaintiff only seeks monetary remedies under their Unfair Competition Law, Cal. Bus. Prof. Code, §§ 17200 *et seq.*, ("UCL"), False Advertising Law, Cal. Civ. Code §§ 17500 *et seq.*, ("FAL"), and unjust enrichment causes of action. Plaintiff expressly reserves his right to amend this Complaint to seek monetary relief under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), if Defendants do not correct their practices and refund all customers within 30 days of receiving a CLRA compliance letter, which Plaintiff intends to send promptly after the filing of this Complaint.

Ari Foods, Inc., and Aai Foods, Inc. regularly conduct business within this District, including by charging the unlawful Junk Fees that are at issue in this litigation within this District.

14.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between class members and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Plaintiff resides in Alameda County, and the unlawful actions of Domino's, Ari Foods, Inc., and Aai Foods, Inc., which are the subject of this action, occurred in San Francisco County, among other locations within California.[4]

16.     **Divisional Assignment:** Pursuant to Local Rules 3-2(c)-(d) and 3-5(b), Plaintiff further states that assignment to the San Francisco and Oakland Division of this Court is proper because Plaintiff resides in Alameda County and certain of the events at issue in this lawsuit occurred in San Francisco County, which pursuant to Local Rule 3-2(d) provides for assignment to the San Francisco or Oakland Division.

### III.     <u>THE PARTIES</u>

**A.     Plaintiff**

17.     At all times relevant to this action, Plaintiff John Murphy was over the age of 18 and was a resident of Emeryville, California.

**B.     Defendants**

18.     Defendant Domino's Pizza Franchising LLC is a limited liability company registered under the laws of Delaware, with its principal place of business in Ann Arbor, Michigan.

19.     Defendant Domino's Pizza LLC is a limited liability company registered under the laws of Michigan, with its principal place of business in Ann Arbor, Michigan.

20.     Defendant Ari Foods, Inc. is a California Corporation with its headquarters in Tracy, California.[5]

---

[4] A declaration from Plaintiff is attached as **Exhibit A**, confirming that venue is proper.
[5] The California Secretary of State's "Business Lookup Tool" currently reflects that Ari Foods, Inc., has a statement of information due that has been outstanding since January 3, 2024.

21.     Defendant Aai Foods, Inc. is a California Corporation with its headquarters in Tracy, California.[6]

22.     On information and belief, Does 1-10 are entities who facilitated Defendants' unlawful Junk Fee practices described in this Complaint by operating Domino's locations in California. The identities of Does 1-10 are not presently known to Plaintiff. The Doe defendants, along with Domino's and the Franchisees, are collectively referred to in this Complaint as "Defendants." Plaintiff expressly reserves his right to amend this Complaint to add the Doe defendants by name, once their identities are known.

23.     Defendants together regularly conduct business within the State and this District, including by operating numerous stores throughout California and charging the Junk Fees that are the subject of this litigation.

## IV.    FACTUAL ALLEGATIONS

**A.    Companies Use Junk Fees to Trick Customers into Paying More than They Otherwise Would for Goods and Services.**

24.     Sophisticated companies—like Domino's—with large, cutting-edge marketing departments know that Junk Fees ensure consumers pay more for a good or service than they otherwise would or should pay.

25.     Indeed, the White House estimates that Junk Fees cost consumers over $90 billion each year in the United States.[7]

26.     One of the most common Junk Fee pricing techniques is called "drip pricing," where a company does not disclose the total price of a product or service until late in the purchase process or incrementally discloses fees to the consumer throughout the transaction, after consumers have already expended time and effort and committed to the originally disclosed price.

---

[6] The California Secretary of State's "Business Lookup Tool" currently reflects that Aai Foods, Inc., has a statement of information due that has been outstanding since January 3, 2024.
[7] The White House, *Readout of White House State Legislators Convening on Junk Fees*, The White House (Apr. 24, 2024), https://web.archive.org/web/20250116070341/https://www.whitehouse.gov/briefing-room/statements-releases/2024/04/24/readout-of-white-house-state-legislators-convening-on-junk-fees/ (last visited Feb. 17, 2026).

27.    Once a consumer decides what to buy, he is unlikely to depart from that decision because of the "additional cognitive effort" involved in resuming his search.[8]

28.    In other words, omitting Junk Fees from the advertised price induces consumers to pay a higher total price than they otherwise would have.

29.    Indeed, as the companies that engage in Junk Fee practices are well aware, consumers choose a product or service based on the advertised disclosed "base price," and not based on the dripped price, especially when Junk Fees are not adequately disclosed.[9]

30.    Accordingly, "buyers may be hurt" because "[w]hen there is uncertainty over possible drip sizes . . . consumers more frequently fail to identify the cheapest offer."[10]

31.    In fact, studies show that "consumers exposed to drip pricing . . . are significantly more likely to (1) initially select the option with the lower base price, (2) make a financial mistake by ultimately selecting the option that has a higher total price than the alternative option, given the add-ons chosen, and (3) be relatively dissatisfied with their choice."[11]

32.    As the FTC's Bureau of Economics has explained, the use of Junk Fees and drip pricing adds steps to the process of determining the actual price of a good or service, which forces consumers to pay more than they would if presented with fully disclosed prices, including all applicable fees.[12]

---

[8] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf [https://perma.cc/449V-HNN3].

[9] Alexander Rasch *et al.*, *Drip pricing and its regulation: Experimental evidence*, 176 J. Econ. Behavior & Org. 353 (2020), https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189 ("[B]uyers . . . . based their purchase decision exclusively on the base price.") (last visited Feb. 17, 2026).

[10] *Id.*

[11] Shelle Santa *et al.*, *Consumer Reactions to Drip Pricing*, Marketing Science (Jan. 15, 2020), at 189, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3924320 (last visited Feb. 17, 2026).

[12] Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, *supra* note 6, at 2-3.

33.     As a result, consumers are forced either to "incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly [purchase], or both."[13]

34.     The FTC has thus characterized Junk Fees as especially egregious when they are hidden (i.e., "disclosed only at a later stage in the consumer's purchasing process or not at all"), because openly disclosed Junk Fees would enable consumers to determine whether or not the cost is favorable compared to those prices listed by competitors.[14]

35.     Moreover, drip pricing runs afoul of the FTC Act itself. *See* 15 U.S.C. § 45(a)(1) (declaring unlawful "unfair or deceptive acts or practices in or affecting commerce"). And the FTC's guidance on bait and switch advertising states that "[n]o statement . . . should be used in any advertisement which creates a false impression of the . . . value . . . of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). If the first contact is secured by the deceptive bait advertisement, it is a violation of law even if the true facts are subsequently made known to the buyer. 16 C.F.R. § 238.2(b). Through drip and/or partitioned pricing, companies induce consumers to choose a product or service based on an advertised price (i.e., the "bait"), despite ultimately charging a different and higher price than advertised (the "switch").

36.     Given this, it is no surprise that companies are motivated to hide Junk Fees through drip pricing for as long as possible in the search and purchase process, as duping consumers into paying Junk Fees brings in substantial revenue.

---

[13] *Id.* at 4; *see also* David Friedman, *Regulating Drip Pricing*, 31 Stanford Law & Policy Review 51 (Feb. 18, 2019), at 67, https://ssrn.com/abstract=3337073 (last visited Feb. 17, 2026) ("[S]ellers provide buyers with the 'initial value' in the form of the initially-presented base price. . . . Buyers are influenced by the initial value, so a lower base price would create the impression of a lower overall price." (citing Gorkan Ahmetoglu *et al*., *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behaviour*, 21 J. Retailing & Cons. Services 696, 697 (2014))).

[14] *See, e.g.*, Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (to be codified 16 C.F.R. Part 464) ("After a market leader took unilateral action to phase out hidden fees, the platform 'lost significant market share and abandoned the policy after a year because consumers perceived the platform's advertised prices to be higher than its competitors' displayed prices.'" (citation omitted)).

37. In many instances, companies even compound the benefit they obtain through these practices by increasing Junk Fees at a higher rate than they increase the base price of the underlying product or service itself.[15] As a result, the product or service appears cheaper to consumers than competitor's products or services, even though the total cost of the product or service, inclusive of Junk Fees, is equally if not more expensive than those other companies' products or services.[16]

38. Companies are also able to increase hidden Junk Fees without suffering meaningful market consequences.[17] In particular, companies are free to charge excessive Junk Fees in part because drip pricing impedes fair, honest, and free market competition.[18]

39. Hence, through drip pricing, companies can charge excessive Junk Fees while skirting economic consequences, as shrouding the fee avoids deterring consumers from purchasing a given product or service based on a Junk Fee and its effect on the total price.

40. Meanwhile, competitor companies and consumers face the consequences. Companies that engage in drip pricing will lure consumers away from honest competitors that do not engage in such practices (and thus appear to charge higher prices) and the dishonest companies will earn a larger share and make higher profits than those competitors.[19]

41. Junk Fees charged through drip and/or partitioned pricing also generate significant burdens for individual consumers.[20]

42. Put simply, Junk Fees and drip pricing are bad for consumers, are bad for businesses, and are bad for competition.

---

[15] *Id.*

[16] *See id.*

[17] Rasch *et al.*, *Drip pricing and its regulation: Experimental evidence*, *supra* note 7.

[18] *Id.* ("[F]irms fiercely compete in base prices but not in drip prices," so "total price increases when firms use drip pricing.").

[19] *Id.* ("[W]here there is uncertainty about the drip size, sellers with a high drip-price limit can earn profits above the competitive level.").

[20] *See* Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (to be codified 16 C.F.R. Part 464) (explaining that "[c]onsumers faced with such fees pay upward of twenty percent more than when the actual price was disclosed upfront," and, as a result, such fees "impose substantial economic harms on consumers").

**B.    Restaurant Junk Fees.**

43.    Since the COVID-19 pandemic swept the nation, restaurants have increasingly adopted the practice of charging customers hidden fees—such as automatic service charges, healthcare, or "mandate" surcharges, and other compulsory add-on fees—that are not included in the price advertised on menus or online, a pricing model analogous to the resort fees historically imposed by the hotel industry to obscure the true cost of services and attract customers with artificially low advertised prices.

44.    These practices emerged—in part—as a response to inflationary pressures where restaurants sought to offset wage, healthcare, and other operational expenses without increasing the initial price a customer sees on the menu.

45.    Since this practice has been adopted, customers have immediately pointed out that these restaurant fees are deceptive drip pricing and Junk Fees that undermine transparency and violate consumer protection laws.

46.    California has taken decisive action to stop Junk Fee practices in restaurants as well as many other industries.

**C.    California's Junk Fee Ban.**

47.    Given the widespread use of Junk Fees, drip pricing, and bait and switch tactics, in 2023, California took decisive action to protect its citizens.

48.    On October 7, 2023, California enacted the Honest Pricing Act, which expressly banned Junk Fees in California by prohibiting businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A).

49.    The Honest Pricing Act further confirmed that drip pricing and bait and switch advertising were already illegal in California, providing that the "act is intended to specifically prohibit drip pricing, which . . . like other forms of bait and switch advertising, is prohibited by *existing* statutes, including the Unfair Competition Law . . .  and the False Advertising Law." *Id.* at § 1(a)-(b) (emphasis added).

-9-

50.     The key provisions of the Honest Pricing Act were added to California's Consumer Legal Remedies Act Cal. Civ. Code §§ 1750 *et seq.*, ("CLRA") at Section 1770(a)(29)(A). The CLRA provides robust enforcement tools for consumers, including:

a.      Prohibiting the waiver of any substantive rights provided for under the CLRA. *Id.* § 1751.

b.      Requiring that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

c.      Establishing a substantive right to litigate in the forum where the transaction occurred. *Id.* § 1780(d).

d.      Establishing a substantive right to pursue class claims. *Id.* § 1781; *see also id.* § 1752.

e.      Authorizing injunctive relief. *Id.* § 1780(a)(2).

f.      Authorizing actual damages. *Id.* § 1780(a)(1).

g.      Authorizing restitution of unlawfully taken sums. *Id.* § 1780(a)(3).

h.      Authorizing punitive damages. *Id.* § 1780(a)(4).

i.      Authorizing statutory damages of $1,000 per violation. *Id.* § 1780(a)(1).

j.      Authorizing statutory damages of $5,000 per injured individual, where the unlawful conduct was directed against the elderly or the disabled. *Id.* § 1780(b)(1).

k.      Requiring that the Court "shall award court costs and attorney's fees to a prevailing plaintiff in litigation." *Id.* § 1780(e).

51.     To help guide businesses into compliance with the law, on May 8, 2024, the California Office of the Attorney General issued a robust set of "Frequently Asked Questions" about what the Honest Pricing Act requires of businesses.[21]

---

[21] https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf [https://perma.cc/28UT-ULNQ] (last visited Feb. 17, 2026).

52.    Among other guidance, the Attorney General's FAQ, answers the following core questions:

Put simply, *the price a Californian sees should be the price they pay.*

In order to help businesses comply with this new law, and to offer consumers guidance about what they can expect, the Attorney General's Office is releasing a set of FAQs. The law is found at Section 1770(a)(29) of the California Civil Code.

**What is the purpose of this law?**

The law is "intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service." Advertising or listing a price that is less than what a consumer will eventually be charged is a form of deceptive advertising that also violates existing state and federal law. Truthful price advertising and listing helps businesses compete fairly on price and allows consumers to make accurate price comparisons.

**What does the new law require?**

The law requires honest pricing. It prohibits businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than government-imposed taxes or fees or reasonable shipping costs. The text of the law can be found at section 1770(a)(29) of the California Civil Code.

**What can a business exclude from the advertised price under this law?**

The listed or advertised price does not need to include taxes and/or fees that the government imposes on the transaction, such as sales tax. In addition, the listed or advertised price does not need to include reasonable shipping costs for physical goods.

No. The price advertised to the consumer must be the full price that the consumer is required to pay.

**Can a business comply with this law by listing or advertising one price and separately stating that an additional percentage fee will apply?**

No. The price listed or advertised to the consumer must be the full price that the consumer is required to pay.

**Can a business comply with this law by advertising the total price for a good or service and separately noting that the total price includes certain fees and charges?**

Yes. The price advertised to the consumer must be the full price that the consumer is required to pay. But the law does not limit a merchant's ability to include fees or charges in that total price, or to tell consumers that its prices include those fees or charges.

**Does this law prohibit a business from advertising one price and adding a variable service fee later in the transaction?**

Yes. The price listed or advertised to the consumer must be the full price that the consumer is required to pay.

53.    Importantly, the guidelines also squarely addressed the question before this Court— can the SF health fee "mandate" be excluded from the original price. It cannot:

**Can a business exclude from the advertised or listed price mandatory charges that will be used to pay business costs, such as security, rent, or salary, healthcare insurance or benefits to employees (e.g., "Healthy SF mandate")?**

No. The listed or advertised price must include all mandatory charges except for reasonable shipping costs for physical goods and taxes and/or fees that the government imposes on the transaction, such as sales tax. A business is free to provide a subsequent breakdown of the business's intended use of the various fees.

54.    Under the Honest Pricing Act, restaurants are not required to add all mandatory fees and charges on individual food or beverage items to the advertised price, provided that any

mandatory fees and charges are "*clearly and conspicuously* displayed, with an explanation of its purpose, on *any advertisement, menu, or other display that contains the price of the food or beverage item*." Cal. Civ. Code § 1770(29)(D)(i-ii) (emphasis added).

55.    This requires that restaurants, like Domino's, must clearly and conspicuously disclose such mandatory fees and charges in their advertisements, menus, and/or other displays that contain the price of the food or beverage item and provide an explanation of why the fee is being charged.  Defendants do not.

56.    The Honest Pricing Act became effective on July 1, 2024.

**D.    Defendants' Decision to Ignore the California Junk Fee Ban.**

57.    Despite widespread media attention regarding the Honest Pricing Act, Domino's failed to design a pricing interface in its stores in compliance with the Honest Pricing Act.

58.    The Honest Pricing Act prohibits businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A).

59.    When the Attorney General released an FAQ page to assist businesses in complying with the Honest Pricing Act, the Attorney General provided explicit guidance regarding whether fees assessed for business costs could be excluded from the advertised or listed price. Specifically, the Attorney General posed the question "Can a business exclude from the advertised or listed price mandatory charges that will be used to pay business costs, such as security, rent, or salary, *healthcare insurance or benefits to employees (e.g., 'Healthy SF mandate')?*"[22]

60.    In response to its own question, the Attorney General stated, "***No. The listed or advertised price must include all mandatory charges***[.]"[23]

61.    Despite having revenue of close to $7,000,000,000 through the first three quarters of 2025, and the ability to engage sophisticated compliance counsel, Domino's did not bring its practices into compliance.[24]

---

[22] *Id*. (emphasis added).
[23] *Id*. (emphasis added).
[24] *Domino's Pizza® Announces Third Quarter 2025 Financial Results*, Domino's Pizza (Oct. 14, 2025), https://ir.dominos.com/news-releases/news-release-details/dominos-pizzar-announces-third-quarter-2025-financial-results [https://perma.cc/HMB6-QYZZ] (last visited Feb. 17, 2026).

62.    Despite California's Office of the Attorney General issuing public guidance on compliance in May 2024, Domino's did not bring its practices into compliance.

63.    Despite many other companies bringing their practices into compliance, Domino's did not bring its practices into compliance.

64.    Instead, for more than a year after the enactment, Domino's made a conscious decision to ignore California's Junk Fee ban, and to violate California's Honest Pricing Act.

65.    While Domino's operates on a "franchise model" in many instances, on information and belief, Domino's controls the advertised prices, taxes, and fees charged to customers making purchases at Domino's restaurant locations in California.

66.    These locations include the Domino's stores #7764, owned and operated by Ari Foods, Inc., and store #8134, owned and operated by Aai Foods, Inc.

67.    Domino's franchise disclosure document ("Franchise Disclosure") confirms a centralized pricing and technology regime that governs how prices and fees are set and presented to consumers in California stores, including the stores at issue here.[25]

68.    The Franchise Disclosure identifies Domino's Pizza Franchising LLC ("DPF") as the franchisor for U.S. franchise agreements entered into after April 2007.[26] This makes DPF the franchisor, Ari Foods, Inc. the franchisee for store #7764, and Aai Foods, Inc. the franchisee for store #8134.

69.    The same Franchise Disclosure explains that Domino's Pizza LLC ("DPL") entered into a management agreement with DPF to "provide the required support and services to franchisees under their franchise agreements."[27] While DPF is the franchisor, DPL is the entity that executes and administers the franchisor's day-to-day performance obligations under Domino's franchise agreements.

---

[25] *See* Domino's Pizza Franchising LLC, *FRANCHISE DISCLOSURE DOCUMENT*, at 28, 43-44 (Apr. 1, 2025), https://www.restfinance.com/app/pdf/fdd/Dominos-2024.pdf [https://perma.cc/76DN-5MYR]. On information and belief, the relevant terms of this Franchise Agreement are substantially the same as the franchise agreements that the Franchisees have entered into with Domino's.
[26] *See id.* at 10.
[27] *Id.*

70.     According to the Franchise Disclosure, "[d]uring your operation of the Store," DPF "will . . . [e]stablish maximum, minimum, or other pricing requirements you may charge for products and services . . . [and] [p]rescribe the Brand Technology or Computer Systems," which includes Domino's "point of sale computer system" used to calculate, present, and charge customers for all amounts on a transaction.[28]

71.     On information and belief, the advertised prices and Junk Fees applied at checkout are set and/or constrained by DPF's pricing requirements and implemented through the Domino's-prescribed computer systems, including its point-of-sale computer system, which DPL manages and services under the Franchise Agreement.

72.     On information and belief, the same pricing requirements and computer systems govern how mandatory fees are labeled, calculated, and added to a customer's order at the register, including Junk Fees.

73.     And on information and belief, DPL's role includes deploying and maintaining point-of-sale systems that standardize how prices, taxes, and fees are assessed and presented to customers across locations in California, including the stores at issue here.

74.     Accordingly, even in a franchise model, Domino's controls the advertised prices via DPF's pricing requirements and the assessment of Junk Fees via prescribed computer systems and technology administered by DPL.

---

[28] *Id.* at 43-44, 28; *see also id.* at 353, 355-57 (pricing and technology requirements under Domino's standard franchise agreement).

-14-

75.     With such control, throughout its California stores, Domino's advertises[29] the base cost of its food to customers when they are determining what to order from Domino's. The below picture shows Domino's menu at store #7764:



76.     As shown in the foregoing, Defendants only advertise the "base price" and do not include any amounts charged to customers to cover Defendants' ongoing business expenses, including the Healthy SF Mandate. Nor do Defendants clearly and conspicuously disclose on the menu that additional mandatory fees and charges apply or provide an explanation of why Defendants are imposing those additional mandatory fees and charges.

77.     When a customer shops in-store at this Domino's location, as well as Domino's locations throughout California, the customer expects to pay the price quoted on the menu, not a price that includes amounts for Defendants' business expenses that are not disclosed up front.

---

[29] It appears that since counsel began its investigation into this potential matter in 2025 that Defendants may have corrected their Junk Fee practices at at least some locations.

1

78.    Here is a sample receipt from store #7764:

-16-

79.    As illustrated in the foregoing receipt, a consumer is charged two "Tax" amounts in addition to the "Sub Total" amount shown. While one of these "Tax" amounts is for sales tax (which can be excluded from the base price pursuant to the Honest Pricing Act, provided the lawful tax rate is applied), the Tax 2 amount is a Junk Fee that is deceptively and misleadingly labeled as "Tax" when in reality Defendants charge this amount to offset their own business expenses.

80.    The "Sub Total" reflects the price a consumer pays on the menu, $13.99 for a 10" HandToss Pizza. The first "Tax" amount is the sales tax assessed on the transaction. The currently effective sales tax rate for San Francisco is 8.625%.[30] On a $13.99 order, the sales tax is $1.21, which corresponds to the "Tax 1" line on the foregoing receipt.

81.    In addition to the sales tax, Defendants also charges customers a second "Tax 2" amount, which is a Junk Fee and is used to pay Defendants' business expenses. In this exemplary case, the amount of the Junk Fee is $0.84. As consumers are expecting to pay the base price and sales tax, the addition of this Junk Fee is a 6% increase on the advertised base price of $13.99. The "Tax 2" amount is not disclosed to a customer prior to purchase and is a prohibited Junk Fee.

82.    The customer experience is the same at certain other Domino's stores in California, including at store #8134.

/ / /

/ / /

/ / /

---

[30] *California City & County Sales & Use Tax Rates (effective January 1, 2026)*, Cal. Dept. of Tax and Fee Admin. (Jan. 2, 2026), https://cdtfa.ca.gov/taxes-and-fees/rates.aspx [https://perma.cc/2EPV-S72R] (last visited Feb. 17, 2026).

83.     Similar to store #7764, store #8134 only advertises[31] the base price of its products, as shown in the photograph of a section of the Domino's menu at store #8134 below:

84.     As shown in the foregoing, Defendants only advertise the "base price" of their food and do not clearly and conspicuously disclose on the menu that additional mandatory fees and charges apply or provide an explanation of why they are imposing those additional mandatory fees and charges.

/ / /

/ / /

/ / /

---

[31] It appears that since counsel began its investigation into this potential matter in 2025 that Defendants may have corrected their Junk Fee practices at least some locations.

-18-

85.    Here is a sample receipt from store #8134:

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

86.     As illustrated in the foregoing receipt—a consumer is charged two "Tax" amounts in addition to the "Sub Total" amount shown. While one of these "Tax" amounts is for sales tax, the Tax 2 amount is a Junk Fee that is deceptively and misleadingly labeled as "Tax" when in reality Defendants charge this amount to offset their own business expenses.

87.     Plaintiff's experience is substantially similar to those of other in store customers of Defendants.

**E.      Plaintiff's Experience with Defendants.**

88.     Plaintiff John Murphy is a citizen of California who has been subjected to Defendants' predatory Junk Fee practices.

89.     Mr. Murphy purchased a large, two-topping pizza, a large, one-topping pizza, and cheesy breadsticks in person at Domino's store #7764 in September 2025.

90.     Defendants advertised the base price of the two pizzas and the breadsticks on their menu at store #7764.

91.     Defendants did not disclose any additional amounts to be charged to Mr. Murphy, nor did they clearly and conspicuously disclose on the menu or otherwise explain that additional mandatory fees and charges would apply or what the purpose of those fees was.

92.     Relying on the prices quoted on the menu, Mr. Murphy decided to purchase the two pizzas and the breadsticks from Defendants.

93.     The prices quoted on the menu for the two pizzas and the breadsticks were material to Mr. Murphy's decision to proceed with the transaction, and the failure to include the mandatory "Tax 2" Junk Fee was a substantial factor in Mr. Murphy's decision to complete the purchase.

94.     Moreover, once the "Tax 2" amount appeared on the receipt, the representation of the Junk Fee as a "tax" lead Mr. Murphy to believe that "Tax 2" was a mandatory charge imposed by the government that was required to be paid on the transaction by him. The representation of the Junk Fee as a "Tax" was also material to Mr. Murphy.

95.     When Mr. Murphy paid for the two pizzas and the breadsticks in cash at checkout, he was charged two "tax" amounts.  In addition to sales tax, Mr. Murphy was charged a "Tax 2"

amount that, although deceptively and misleadingly labeled as "Tax," was in reality a Junk Fee charged by Defendants to offset their own business expenses.

96.     Defendants did not disclose the additional "Tax 2" amount to Mr. Murphy before he made the purchase, and certainly did not do so clearly and conspicuously.

97.     Had Mr. Murphy known that he would be charged an unlawful Junk Fee—the additional "Tax 2" amount—at the start of the transaction, he would not have purchased the two pizzas and the breadsticks from Defendants' and/or refused to pay the unlawful "Tax 2" Junk Fee.

**F.     Defendants Acted with Malice, Oppression, and Fraud.**

98.     As detailed in this Complaint, Defendants acted with malice, oppression, and fraud.

99.     Defendants acted with malice, because, among other reasons and as otherwise detailed in this Complaint, Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights of the public, Plaintiff, and the Class (as defined below) because Defendants knew (or should have known) that their "Tax 2" Junk Fee charges were illegal, but despite that induced Plaintiff and the Class to pay the illegal charges anyway.

100.     Defendants' conduct was oppressive because, among other reasons and as otherwise detailed in this Complaint, it was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights, including by falsely inducing them to pay Junk Fees, which were falsely held out to be mandatory government taxes.

101.     Defendants' conduct was fraudulent, because, among other reasons and as otherwise detailed in this Complaint, Defendants intentionally misrepresented and concealed the true nature of their unlawful Junk Fees from Plaintiff and the Class by affirmatively representing that the Junk Fees were mandatory government taxes when they in fact were not.

**G.     Defendants' Misrepresentations Have Tolled the Statute of Limitations.**

102.     As detailed throughout this Complaint, Defendants have consistently and explicitly represented to the public and their customers, including Plaintiff and the Class (as defined below), that the Junk Fees were mandatory government taxes when they in fact were not.

103.    Among other things, Defendants induced Plaintiff and the Class to pay the Junk Fees by affirmatively representing that the Junk Fees were mandatory government taxes when they in fact were not.

104.    As a direct and proximate cause of Defendants' misrepresentations and statements, Plaintiff and the Class have no reason to believe that the Junk Fees were anything other than lawfully imposed, government mandated taxes, which they were required to pay in order to complete their transactions.

105.    Plaintiff and the Class were unable to discover—and in fact did not discover—the true and unlawful nature of the Junk Fees on their own.

### V.    CLASS ALLEGATIONS

106.    This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), including, without limitation, Sections (b)(2) and (b)(3) of Rule 23.

107.    Plaintiff seeks certification of the following class (the "Class"):

> All persons who were charged a Fee[32] when making an in person purchase at a Domino's restaurant in California.

108.    Defendants' deceptive Junk Fee practices violate each Class member's individual statutory right to truthful information from Defendants about the actual price of their orders.

109.    Defendants' deceptive Junk Fee practices have resulted in actual injury and harm to the Class members in the amount of the Junk Fees which were absent from the advertised price and which they paid as a result of Defendants' illegal Junk Fee practices.

110.    Plaintiff explicitly reserves his right to amend, add to, modify, and/or otherwise change the proposed class definition as discovery in this action progresses.

111.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any

---

[32] "Fee" means any amount charged in excess of the displayed price that was required to complete the transaction. Excluded from the definition of "Fee" are any state or locally mandated government taxes that are required by law or regulation to be charged directly to a consumer.

-22-

entity in which the Defendants or their parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and non-attorney employees of their firms; (6) any person who has entered into a valid and enforceable arbitration agreement with Defendants that covers the claims at issue in this action; and (7) the legal representatives, successors, and assigns of any such excluded persons;

112.    **Numerosity.** Plaintiff is informed and believes that there are tens if not hundreds of thousands of members of the Class. The Class is so large that the joinder of all of its members is impracticable. The exact number of members of the class can be determined from information in the possession and control of Defendants.

113.    **Commonality.** Defendants have acted or refused to act on grounds that apply generally to the Class. Absent certification of the Class, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Defendants. Numerous common issues of fact and law exist, including, without limitation:

   a.    Whether Defendants are "person[s]" within the meaning of Section 1761(c).

   b.    Whether Plaintiff is a "consumer" within the meaning of Section 1761(d).

   c.    Whether Defendants' Junk Fee practices violate Section 1770(a)(29)(A), which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges."

   d.    Whether Defendants' Junk Fee practices violate Section 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

   e.    Whether Defendants' Junk Fee practices violate any other provisions of the CLRA.

   f.    Whether Defendants' Junk Fee practices violate the UCL and/or the FAL.

   g.    Whether Defendants are liable for unjust enrichment.

   h.    Whether Defendants make standardized representations to consumers.

-23-

i.    Whether Defendants charge standardized Junk Fees to consumers.

j.    The dates of Defendants' Junk Fee practices and any purported changes to those practices.

114.    **Predominance.** These common issues predominate over individualized inquiries in this action because Defendants' liability can be established as to all members of the Class as discussed herein.

115.    **Typicality.** Plaintiff's claims against Defendants' and experience with Defendants are typical, if not identical, to the claims and experiences of members of the Class because, among other reasons, Plaintiff's claims arise from Defendants' practices that are applicable to the entire Class.

116.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class, as Plaintiff and each member of the Class lost money by paying Junk Fees to Defendants. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

117.    **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Class to recover damages; the damages suffered by members of the Class may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Class may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Class can be effectively managed in a single proceeding. Plaintiff and his counsel know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

118.    Plaintiff reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## VI.    <u>CAUSES OF ACTION</u>

**A.    First Cause of Action: Violation of California's Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.,* on Behalf of Plaintiff and the Class.**

119.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 118, inclusive, of this Complaint.

120.    At all relevant times, Plaintiff and Class members were "consumers" within the meaning of the CLRA, as they were individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

121.    Defendants' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA, namely the selling of food and charging mandatory Junk Fees that exceeded the price initially advertised and/or displayed to consumers.

122.    Defendants violated the CLRA by, among other things, making materially false statements and omitting truthful information about the Junk Fees charged to Plaintiff and the Class.

123.    Specifically, Defendants violated Section 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised" and Section 1770(a)(29)(A), which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges."

124.    Additionally, Defendants violated the CLRA by:

    a.    "Passing off goods or services as those of another" Cal. Civ. Code § 1770(a)(1);

    b.    "Misrepresenting the source, sponsorship, approval, or certification of goods or services" Cal. Civ. Code § 1770(a)(2);

    c.    "Misrepresenting the affiliation, connection, or association with, or certification by, another" Cal. Civ. Code § 1770(a)(3);

d. **"**Representing that goods or services have . . . characteristics . . . that they do not have" Cal. Civ. Code § 1770(a)(5);

e. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" Cal. Civ. Code § 1770(a)(14); and

f. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" Cal. Civ. Code § 1770(a)(20).

125.    Defendants' actions and misrepresentations were material, and Defendants' violations of the CLRA were a substantial factor in causing Plaintiff and the Class to incur the Junk Fee charges.

126.    As a direct and proximate consequence of these actions, Plaintiff and the Class suffered injury.

127.    Defendants' conduct was malicious, fraudulent, and wanton in that they intentionally and knowingly provided misleading information to Plaintiff and the Class for Defendants' own benefit to the detriment of Plaintiff and the Class.

128.    At this time, Plaintiff only seeks injunctive and declaratory relief for his CLRA cause of action.[33]

---

[33] Pursuant to Section 1782(d) of the CLRA, Plaintiff expressly reserves his right to amend his CLRA cause of action to add claims for monetary relief, including, without limitation, for actual, punitive, and statutory damages, at least 30 days after providing Domino's the notice contemplated by Section 1782(a).

**B.      Second Cause of Action: Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.,* on Behalf of Plaintiff and the Class.**

129.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 118, inclusive, of this Complaint.

130.    Defendants, Plaintiff, and the Class are "persons" within the meaning of the UCL.

131.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

132.    Defendants' practices of charging Junk Fees are "unlawful" within the meaning of the UCL because, among other things, those Junk Fees violate the CLRA, with Section 1770(a)(9) prohibiting "[a]dvertising goods or services with intent not to sell them as advertised" and Section 1770(a)29(A) prohibiting "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges."

133.    The Junk Fees are also unlawful within the meaning of the UCL because they violate the False Advertising Act (as detailed in the Third Cause of Action, below).

134.    The Junk Fees are also unlawful within the meaning of the UCL because they violate Penal Code Section 496(c) (as detailed in the Fifth Cause of Action, below).

135.    The Junk Fees are also unlawful within the meaning of the UCL because they violate California's Revenue and Taxation Code, including Section 6901.5, which requires that any excessive tax amounts charged be provided to the state or returned to the consumer.

136.    The acts and practices of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL because Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

137.    Defendants have, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by tricking consumers into paying Junk Fees by failing to display those prices in the initially advertised prices.

138.    Defendants have, in the course of business and in the course of trade or commerce, charged these unlawful Junk Fees to Plaintiff and the Class.

-27-

139.    Plaintiff and the Class have suffered injury in fact—in the form of Junk Fees—and have lost money as a result of Defendants' unlawful business acts and practices and will continue to lose money and be injured by those acts and practices if the practices are not enjoined.

140.    Plaintiff and the Class seek an order providing restitution and disgorgement of all Junk Fees paid to Defendants.

141.    Plaintiff and the Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiff and the Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

**C.    Third Cause of Action: Violation of California's False Advertising Law, Cal. Civ. Code §§ 17500 *et seq.*, on Behalf of Plaintiff and the Class.**

142.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 118, inclusive, of this Complaint.

143.    In violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, Defendants' advertisements, policies, acts, and practices described in this Complaint were designed to cause Plaintiff and the Class to pay Junk Fees to Defendants, and did in fact result in Plaintiff and the Class paying unlawful Junk Fees to Defendants.

144.    Defendants knew or reasonably should have known that their representations as described in this Complaint were false and deceptive.

145.    Specifically, as alleged in this Complaint, Defendants' unfair, unconscionable, deceptive acts, practices, omissions, and/or affirmative misstatements include, but are not limited to displaying and advertising an initial price for which a consumer could not actually complete the transaction.

146.    As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

147.    Plaintiff and the Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiff and the Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

**D.      Fourth Cause of Action: Unjust Enrichment, on Behalf of Plaintiff and the Class.**

148.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 118, inclusive, of this Complaint. Plaintiff explicitly pursues this cause of action in the alternative to Plaintiff's statutory causes of action.

149.    To the detriment of Plaintiff and the Class, Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

150.    Plaintiff and the Class conferred a benefit on Defendants when they paid Defendants the Junk Fees, which were charged in contravention of applicable law, and which they could not reasonably avoid.

151.    Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

152.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

153.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of their inequitable conduct.

**E.      Fifth Cause of Action: Violation of Penal Code section 496(c), on Behalf of Plaintiff and the Class**

154.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 118, inclusive.

155.    Cal. Penal Code § 496 provides that every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year. If the value of the property does not exceed $950, the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, subject to certain statutory conditions.

156.    What constitutes "theft" under the Penal Code is enumerated in Cal. Penal Code § 484. For purposes of the Penal Code, "theft" is defined as any person who shall feloniously steal,

-29-

take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property, or obtains labor or services of another.

157.     Defendants violated Cal. Penal Code § 496 as they received property (money) from Plaintiff and the Class in a manner that constitutes theft. Defendants knowingly designed their in-store signage, website, and mobile application in a way to show customers an advertised price that was in direct violation of California law. When Defendants displayed their advertised prices, they knew that they were not displaying the true price customers would pay for their order as Defendants failed to add to the total price amounts that they called "tax," which in reality, were amounts used to fund Defendants' business expenses. In creating these systems, Defendants knew (or should have known) that they were required to display the actual price of Domino's food to consumers, including any amounts used for business expenses, but decided not to do so, despite having ample time to comply with the California Honest Pricing Act and the additional guidance promulgated by the California Attorney General. Further, Defendants committed theft by falsely claiming the Junk Fee constituted a "tax." As such, Defendants, knowingly, and by design, using fraudulent misrepresentations, defrauded Plaintiff and the Class of their money by inducing them to pay more for their products than the advertised prices promised.

**VII.   PRAYER FOR RELIEF**

158.     WHEREFORE, Plaintiff and members of the Class seek an Order:

    a.     Certifying the proposed Class pursuant to Rule 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

    b.     Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

c.    Declaring that Defendants have committed the violations of law alleged herein;

d.    Providing for any and all injunctive relief the Court deems appropriate;

e.    Awarding statutory damages in the maximum amount for which the law provides;

f.    Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

g.    Providing for any and all equitable monetary relief the Court deems appropriate;

h.    Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

i.    Awarding Plaintiff his reasonable costs and expenses of suit, including attorney's fees;

j.    Awarding pre- and post-judgement interest to extent the law allows; and

k.    Providing such further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: February 26, 2026

*/s/ Wesley M. Griffith*
Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP, LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

David A. McGee, *pro hac vice* to be filed
**ALMEIDA LAW GROUP, LLC**
3133 Connecticut Ave NW
Washington, DC 20008
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

*Attorneys for Plaintiff and the Putative Class*

-31-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.    DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of himself and the putative Class, hereby respectfully demands a trial by jury on all claims for which a jury trial is available.

Dated: February 26, 2026

*/s/ Wesley M. Griffith*
Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP, LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

David A. McGee, *pro hac vice* to be filed
**ALMEIDA LAW GROUP, LLC**
3133 Connecticut Ave NW
Washington, DC 20008
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL